IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

```
LINDA G. ROBERTS,                       :
                                        :
      Plaintiff,                        :
                                        :
vs.                                     :    CIVIL ACTION 12-0247-M
                                        :
MICHAEL J. ASTRUE,                      :
Commission of Social Security,          :
                                        :
      Defendant.                        :
```

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*). The action was referred for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Oral argument was heard on November 26, 2012. Upon consideration of the administrative record, the memoranda of the parties, and oral argument, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and

1

Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the most recent administrative hearing, Plaintiff was fifty-four years old, had completed a tenth-grade education (Tr. 39), and had previous work experience as a cook, cashier, and maintenance worker (Tr. 40-41). In claiming benefits, Plaintiff alleges disability due to generalized osteoarthritis; bilateral knee degenerative joint disease with chronic bilateral knee pain; cervical degenerative disc disease with chronic neck pain; probable lumbar degenerative disc disease with chronic back pain; degenerative joint disease of both thumbs with bilateral hand pain; carpal tunnel syndrome; and obesity (Doc. 13 Fact Sheet).

The Plaintiff filed applications for disability benefits and SSI on May 20, 2009 (Tr. 172-177; *see* Tr. 21). Benefits

2

were denied following a hearing by an Administrative Law Judge (ALJ) who determined that Roberts was capable of performing her past relevant work as a cashier (Tr. 21-31). Plaintiff requested review of the hearing decision (Tr. 14-15) by the Appeals Council, but it was denied (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Roberts alleges that: (1) The ALJ did not properly consider the opinions and conclusions of her treating physician; and (2) the ALJ made an unsupported residual functional capacity (hereinafter *RFC*) finding (Doc. 13). Defendant has responded to—and denies—these claims (Doc. 16). The relevant evidence of record follows.

On July 24, 2006, Roberts had x-rays made of her right elbow that identified no fracture (Tr. 268). On September 19, she underwent an enhanced CT of the chest which revealed no evidence of a mediastinal mass and no acute pulmonary or pleural disease (Tr. 269). Eight days later, Plaintiff had a right upper quadrant ultrasound performed that demonstrated a solid mass in the left lobe of the liver (Tr. 270). On October 5, she had an MRI of the abdomen, with and without IV contrast, which revealed a benign lesion in the liver (Tr. 271). On February

3

21, 2007, Roberts underwent an MRI of the left knee which showed degenerative osteoarthritic changes involving the medial tibila plateau and patellofemoral compartment as well as advanced changes of chondromalacia in the patella; ligaments and tendons were intact and there was no tear of either the medial or lateral meniscus (Tr. 266).

    On September 12, 2009, Dr. Elmo Ozment, Jr., a general surgeon, saw Roberts who had complaints of bursitis and arthritis in her knees; she claimed that had a dull, aching pain that measured 8-10 on a ten-point scale (Tr. 306-09, 335).  She also complained of bilateral wrist pain and back pain that was constantly at a ten.  On examination, Plaintiff's coordination, station, and gait were normal.  Tandem walking hurt her knees and back; she could not squat because of back pain.  Dr. Ozment provided range of motion (hereinafter *ROM*) measurements for Roberts's spine, hips, knees, ankles, shoulders, elbows, wrists, and fingers/thumbs; no ROM was provided for the lumbar spine as Plaintiff said her back hurt too much to bend forward.  Straight leg raising was negative while seated; she would not lie down on the table, though, for that measurement to be determined.  The doctor's general findings were that Roberts had decreased sensation over the radial side of the wrist and around the base

4

of both thumbs; there were no paravertebral spasms.  Grip was excellent bilaterally although Plaintiff would not use her thumbs, complaining of the pain.  She had normal muscle bulk and tone in the upper and lower extremities.  There was some numbness to light touch and decreased sensation of the radial aspect of both wrists.  Deep tendon reflexes were within normal limits.  Ozment's diagnosis was bursitis/arthritis of her knees, by history; chondromalacia of the left patella; bilateral carpal tunnel syndrome, by history; and back pain, by history.

   Treatment notes from Dr. Terry Kurtts, a family medicine doctor, show that on September 21, 2009, Plaintiff complained of lower back pain, worse on the left side, for two weeks (Tr. 311, 334).  On December 17, Plaintiff complained of arthritic pain in her thumbs, noting that rain made the pain worse (Tr. 310).  Two weeks later, Kurtts completed a form for Roberts to receive disability access parking privileges, noting that she could not walk two hundred feet without stopping to rest (Tr. 312).  On March 22, 2010, Plaintiff had complaints of pain in her knees, ankle, and neck; she also said that she was not resting (Tr. 313).

   On May 17, 2010, Roberts went to the Mobile County Health Department with complaints of low back pain, bilateral knee

pain, and bilateral thumb pain (Tr. 314-27).  A notation was made that Plaintiff was taking more than three hundred Lortab[1] 10 per month (Tr. 314).  The assessment was arthropathy, backache, and continuous opioid abuse (Tr. 315).

On June 28, 2010, Dr. Kurtts saw Roberts with complaints of pain in her knees and back, swelling in her knees, and numbness in her left leg (Tr. 332).  On the same day, he completed a clinical assessment of symptoms form in which he indicated that Roberts suffered from arthritis of the knees, cervical degenerative disc disease, and low back pain; her prognosis was only fair (Tr. 328-331).  The doctor noted significantly reduced ROM in both hips, decreased forward bending at the lumbo-sacral area, abnormal gait, muscle spasm, and tenderness.  Kurtts indicated that her symptoms would distract her from adequately performing her daily activities or work and that physical activity would increase the severity of her symptoms to the point that she could not work; he thought that medications would cause some side effects but that they would not be serious.  It was Dr. Kurtts' opinion that Plaintiff could use her hands for simple grasping, fine manipulation, and for pushing/pulling of

---

[1]**Error! Main Document Only.** *Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

arm controls but that she could not use her feet for leg controls.  Dr. Kurtts indicated that Roberts needed a job that would allow her to shift positions from sitting, standing, and walking and would need to take a break every two hours for thirty minutes; he stated that Plaintiff did not need a cane or other assistive device.  The doctor thought that Roberts's impairments would cause her to miss three workdays a month.  It was Dr. Kurtts' opinion that Plaintiff had suffered these symptoms since November 2004.

On September 27, 2010, Dr. Kurtts saw Roberts for knee pain, among other things (Tr. 333).

On December 14, Plaintiff was seen by Dr. Todd D. Elmore, a Neurologist, who noted that although her complaints were mostly arthritic in nature, she was in no acute distress (Tr. 338-45).  The doctor noted that Plaintiff was alert, oriented, and that her memory was intact; she had a normal attention span and concentration.  Motor strength was full and equal bilaterally in upper and lower extremities; there were no sensory deficits to light touch or vibration.  Reflexes were diminished distally; Roberts was unsteady on her feet.  An NCV study of the four extremities was fairly unremarkable, except for some mild right-sided carpal tunnel syndrome; an EMG of the extremities revealed

7

no evidence of significant acute or chronic denervation.  Dr. Elmore's impression was:  right carpal tunnel syndrome; chronic low back pain; chronic bilateral knee pain with an abnormal MRI in 2007 confirming some degenerative change in her left knee; obesity; and chronic pain syndrome with some medication overuse.  It was the doctor's opinion that Roberts could probably perform sedentary work.  The doctor completed a physical capacities evaluation in which he indicated that Plaintiff was capable of sitting for four hours, standing for two hours, and walking for one hour at a time while having the ability to sit for eight hours, stand for four hours, and walk for three hours during an eight-hour day (Tr. 345).  It was Dr. Elmore's opinion that Roberts could lift up to fifty pounds occasionally, twenty-five pounds frequently, and ten pounds continuously; she could carry up to twenty-five pounds occasionally, twenty pounds frequently, and ten pounds continuously.  The doctor indicated that she could use her feet and hands to operate controls; she could bend, squat, crawl, and climb occasionally, but could reach frequently.  Elmore indicated that all restrictions were due to subjective complaints.

    Roberts was seen on January 3, 2011 by Dr. William A. Crotwell, III, an orthopedic surgeon, who noted multiple

complaints of pain; he noted that she walked with a walker (Tr. 347-50). The doctor indicated that Plaintiff could bend and get up from a chair without difficulty; toe and heel walking were good. She was tender over the SI joints and had generalized tenderness across the back. Sensory was normal and motor was 5/5 in the lower extremities. Straight leg raise while sitting was 90 degrees with no pain; hip rotation was negative. Straight leg raise while lying down was 90 degrees bilaterally. X-rays revealed mild arthritis of the thoracic and lumbar spine; Plaintiff had arthritis in both knees and both hands. Crotwell's impression was bilateral CMC arthritis; bilateral arthritis of the knees, mild to moderate; and history of back pain and thoracic pain. The Orthopedic Surgeon completed a physical capacities evaluation in which he indicated that Roberts could sit one, stand one, and walk one hour at a time, but could sit eight, stand six, and walk four hours during an eight-hour day. It was Crotwell's opinion that Plaintiff could lift up to fifty pounds occasionally, twenty-five pounds frequently, and ten pounds continuously and could carry up to twenty-five pounds occasionally, twenty pounds frequently, and five pounds continuously. It was the doctor's opinion that Roberts would have no trouble using leg or hand controls; she

9

could bend, squat, crawl, and climb occasionally, but could reach frequently.  He further indicated that Plaintiff was totally restricted from working at unprotected heights, moderately limited in being around moving machinery, and mildly limited in driving automotive equipment.  The doctor noted that Plaintiff could definitely work eight-hour days, performing sedentary and light work.

On January 27, 2011, Dr. Kurtts noted that Plaintiff had complaints of back and knee pain for which he prescribed Lortab (Tr. 351).

In his determination, the ALJ reviewed the medical evidence and found that Roberts was capable of returning to her past relevant work as a cashier (Tr. 21-31).  In reaching that decision, the ALJ determined that Plaintiff's statements concerning her limitations and impairments were not credible, a finding not challenged in this action (*see* Doc. 13).  The ALJ went on to give significant weight to the assessment of Drs. Crotwell and Elmore while rejecting the opinion of Dr. Kurtts (Tr. 29-30).

Roberts first claims that the ALJ did not accord proper legal weight to the opinions, diagnoses and medical evidence of her physician.  Plaintiff specifically references the opinions

and conclusions of Dr. Kurtts (Doc. 13, pp. 2-10).  It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[2] *see also* 20 C.F.R. § 404.1527 (2012).

In rejecting the conclusions of Dr. Kurtts, the ALJ stated the following:

> No weight can be given to the conclusory opinion of Dr. Kurtts.  The opinion is inconsistent with both his own treatment notes and the other medical evidence.  Greater weight is given to the opinion of both the examining sources as specialists (Exhibit 11F).  Dr. Kurtts's opinion is inconsistent with the assessment of the specialists, [his] own function report, the conservative treatment both sought by the claimant and advised by Dr. Kurtts himself, and with the findings of Dr. Ozment which are dramatically inconsistent with a finding that the claimant is disabled.

(Tr. 29-30).

The Court finds that the ALJ's opinion is supported by

---

[2]The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to

11

substantial evidence.  The treatment notes reveal that although Dr. Kurtts saw Plaintiff on a regular basis, *i.e.*, roughly every three months, and reported her complaints of pain, he did nothing more for her than prescribe medication.  There is no record that he ever took ROM measurements[3] to gain an understanding of what she could—and could not—physically do.  The Court found the doctor's records to contain nothing more than Roberts's complaints of pain and the doctor's diagnoses and prescriptions.  Plaintiff's recitation of the medical evidence in the brief before the Court confirms this finding (Doc. 13, pp. 2-10).

   Furthermore, Drs. Crotwell and Elmore are both specialists who were privy to the same information to which Dr. Kurtts had access;[4] furthermore, as their examinations came after that of Dr. Kurtts, they, most likely, had access to the Clinical Assessment of Symptoms form he had completed.  They performed their own examinations, including ROM measurements and

---

October 1, 1981.
   [3]The only ROM measurement appearing in Dr. Kurtts's records is straight leg raising listed in the Clinical Assessment of Symptoms Form (Tr. 328).  The Court notes that that measure differs significantly from the measurements taken by Drs. Ozment and Crotwell (*cf.* Tr. 309, 348).
   [4]Though Plaintiff argues that Dr. Crotwell did not have certain information before him at the time of his evaluation (Doc. 13, p. 6), the medical record suggests otherwise (*see* Tr. 350) ("The medical evidence of record provided by DDS was reviewed and those findings

12

observations of Plaintiff's abilities to function, and reached their own determinations.  The conclusions of the three consultative physicians were more in agreement with each other than with the conclusions of Dr. Kurtts.  The Court finds no merit in Plaintiff's argument otherwise.

Roberts next claims that the ALJ made an unsupported RFC finding (Doc. 13, pp. 10-12).  The Court notes that the ALJ is responsible for determining a claimant's RFC.  20 C.F.R. § 404.1546 (2012).  The Court also notes that the social security regulations state that Plaintiff is responsible for providing evidence from which the ALJ can make an RFC determination.  20 C.F.R. § 416.945(a)(3).

In his determination, the ALJ made the following finding:

> The claimant has the residual functional capacity to perform a range of light work.  The claimant can lift and carry twenty pounds occasionally, ten pounds frequently, and five pounds continuously.  She can stand and walk for six hours in an eight-hour day.  She can sit for eight hours in an eight-hour day.  The claimant can occasionally stoop, crawl, climb, and crouch.  She can continuously grasp and engage in fine manipulation.

(Tr. 24).

---

were considered in the overall assessment of the patient").

The Court notes that the ALJ's RFC finding is very similar to the one suggested by Dr. Crotwell (Tr. 349) and not much different from the physical capacities evaluation completed by Dr. Elmore.  Both doctors were of the opinion that Plaintiff was capable of lifting and carrying more weight than the ALJ found, but that is no reason to find that the ALJ's conclusion is without substantial support of the evidence.[5]  The ALJ's opinion regarding Plaintiff's RFC certainly tracks the opinions of Drs. Crotwell and Elmore more closely than that of Dr. Kurtts which states no opinion regarding Plaintiff's ability to lift and carry any given amount of weight (Tr. 328-30).  Dr. Kurtts's form also suggested that Roberts would have to rest for thirty minutes every two hours during an eight-hour workday; there is absolutely no support in the record for such a limitation.  Plaintiff's claim that the ALJ did not properly consider the evidence in reaching an RFC determination is without merit.

Roberts has raised two different claims in bringing this action.  Both are without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a

---

[5]The Court finds curious Plaintiff's argument that because the ALJ gave her the "benefit of the doubt" in finding an RFC that was lower than what had been suggested by the two doctors, the ALJ's

conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 28th day of November, 2012.

<pre>
                                s/BERT W. MILLING, JR.
                                UNITED STATES MAGISTRATE JUDGE
</pre>

---

conclusions should be rejected (Doc. 13, p. 11).